# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1096
_____

| | | |
|---|---|---|
| Michael Casey; Julie Pennington; Michael Crider; Kathleen Keller; Richard Keller; Richard Piatchek; Heidi Piatchek, | * * * * * | |
| Plaintiffs – Appellants, | * * | |
| v. | * * | |
| Federal Deposit Insurance Corporation, as receiver of Washington Mutual Bank, | * * * * | Appeal from the United States District Court for the Eastern District of Missouri. |
| Defendant, | * * | |
| North American Savings Bank; Heartland Bank; ABM AMRO Mortgage Group, Inc., | * * * * | |
| Defendants – Appellees. | * | |

_____

Submitted: September 24, 2009
Filed: October 20, 2009
_____

Before MURPHY, BRIGHT, and RILEY, Circuit Judges.
_____

MURPHY, Circuit Judge.

The plaintiffs in this case were members of a class who brought claims in Missouri state court against their mortgage lenders, alleging that the lenders had engaged in the unauthorized practice of law by charging a fee for preparation of loan documents by nonlawyers. The state court dismissed the claims against four lenders who were federal savings associations (FSAs). While an appeal of that decision was pending, the Federal Deposit Insurance Corporation (FDIC) was substituted for one of the FSA lenders and it removed the claims to federal district court. That court[1] adopted the state court's preemption decision and then transferred the appeal to this court, together with a renewed motion to remand. We affirm.

I.

Appellants are seven homeowners whose claims against FSA lenders were dismissed by the state court based on federal preemption: Michael Casey, Julie Pennington, Michael Crider, Kathleen Keller, Richard Keller, Richard Piatcheck, and Heidi Piatchek (the homeowners). The original appellees were the FDIC and three FSA lenders: North American Savings Bank, Heartland Bank, and ABM AMRO Mortgage Group, Inc. While this appeal was pending, we granted Michael Crider's motion to dismiss his claims against the FDIC.

The FSA lenders are mortgage lenders or brokers who extended credit or refinancing for the homeowners' purchases of residential property. In the course of these transactions, the FSA lenders allegedly charged fees ranging from $100 to $250 in exchange for the preparation of mortgage documents. The homeowners allege that charging such fees constitutes the practice of law which Missouri reserves for licensed attorneys. They seek to enforce Missouri statutory and common law prohibiting the

---

[1] The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

unauthorized practice of law, as well as the Missouri Merchandising Practices Act (MMPA).

The FSA lenders moved in the state court to dismiss the claims against them, arguing that the Missouri laws in question were preempted by 12 C.F.R. § 560.2, a federal regulation issued by the Office of Thrift Supervision (OTS) under the Home Owners' Loan Act (HOLA), 12 U.S.C. §§ 1461–1468. The state court agreed and granted the motion, concluding that the Missouri laws were preempted and therefore the claims failed to state causes of action.

The homeowners appealed to the Missouri Court of Appeals and while their appeal was pending, the FDIC was appointed receiver of Washington Mutual Bank, which was successor in interest to one of the FSA lenders, North American Mortgage Company (NAMCO). After its motions to be substituted for NAMCO and for a ninety day stay were granted under 12 U.S.C. § 1821(d), the FDIC removed all these claims to the United States District Court for the Eastern District of Missouri under § 1819(b)(2)(B).

The homeowners filed two motions in the federal district court. One was filed by Michael Crider who sought dismissal with prejudice of his claims against the FDIC pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. The second was filed by the remaining homeowners who sought remand of their appeals to the Missouri Court of Appeals. The district court denied the first motion without prejudice but did not rule on the second. Instead it adopted the state court's order as its own, relying upon Metro North State Bank v. Gaskin, 34 F.3d 589 (8th Cir. 1994), and transferred the case to this court for appeal.

The homeowners renewed both motions before this court. On February 3, 2009, we granted Michael Crider's motion to dismiss pursuant to Rule 42(b) of the

Federal Rules of Appellate Procedure. We ordered that the remaining homeowners' renewed motion for remand be considered with the substantive appeal.

II.

The homeowners argue that remand to the Missouri Court of Appeals is required by 28 U.S.C. §§ 1446(a), 1447(c) and that it is appropriate as a matter of judicial discretion under 28 U.S.C. § 1441(c) and Burford v. Sun Oil Co., 319 U.S. 315 (1943). They also contend that the state court erred when it found their state law claims preempted by 12 C.F.R. § 560.2. We consider the renewed motion to remand before turning to the state court preemption decision which was adopted by the district court.

A.

The homeowners first argue that remand is required because the February 3, 2009 dismissal of the claims against the FDIC deprived this court of subject matter jurisdiction over their state law claims against the remaining FSA lenders. Section 1447(c) requires that a case removed to federal court be remanded if at any time it is determined that subject matter jurisdiction is lacking. Filla v. Norfolk Southern Ry. Co., 336 F.3d 806, 809 (8th Cir. 2003). Because we retain subject matter jurisdiction under 12 U.S.C. § 1819(b)(2)(A), however, remand is not required by § 1447(c).

We have not previously addressed the issue whether dismissal of the FDIC from a case predicated upon § 1819(b)(2) jurisdiction deprives a federal court of subject matter jurisdiction over remaining state law claims. We have however answered an analogous question in the negative: in Kansas Pub. Emples. Retirement Sys. v. Reimer & Koger Assocs., 77 F.3d 1063, 1067 (8th Cir. 1996) (KPERS), we decided that dismissal of the Resolution Trust Corporation (RTC) from a case predicated upon 12

U.S.C. § 1441a(a)(11) jurisdiction did not divest federal subject matter jurisdiction over remaining state law claims for which no other basis of jurisdiction existed.

In KPERS, the plaintiff sued a bank and various individuals in state court, alleging violations of state law. Id. at 1065. After the RTC was substituted for the bank, it removed the entire case to federal court under § 1441a(a)(11), which provided the sole basis for federal subject matter jurisdiction. Id. at 1066. Subsequently the RTC was dismissed from the case, and the plaintiff moved to remand the state law claims brought against the individual defendants. Id. We affirmed the district court's refusal to remand, holding that "under [§ 1441a(a)(11)], once the RTC becomes a party to the case, the entire action is 'deemed to arise under the laws of the United States' and is within the original jurisdiction of the district court." Id. at 1067 (quoting § 1441a(a)(11)).

The language in § 1441a(a)(11), upon which that holding turned, tracks the wording found in § 1819(b)(2)(A), the statute which serves as the sole basis for federal subject matter jurisdiction in this case. Compare § 1441a(a)(11) ("[A]ny civil action, suit, or proceeding to which the Thrift Depositor Protection Oversight Board is a party shall be deemed to arise under the laws of the United States . . . ."), with § 1819(b)(2)(A) ("[A]ll suits of a civil nature . . . to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."). Employment of such similar language in these two closely related statutes implies an intent by Congress that the two be interpreted in the same way. See Atlantic Clearners & Dyers v. U.S., 286 U.S. 427, 433 (1932). The fact that the current versions of the two sections were enacted by the same act of Congress only buttresses that inference. See Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183, 216, 367. Moreover, the law concerning the RTC often informs its analogue in the FDIC context, and vice versa. See, e.g., In re Collins Sec. Corp., 998 F.2d 551 (8th Cir. 1993).

We find our holding in KPERS persuasive here and conclude that all claims in a case to which the FDIC is a party have "arising under" federal subject matter jurisdiction. The subsequent dismissal of the claim against the FDIC did not defeat that jurisdiction or withdraw the court's jurisdiction over the state law claims filed against the other FSA lenders. Because we retain jurisdiction over the latter claims, section 1447(c) does not require that they be remanded to the Missouri Court of Appeals.

The homeowners next argue that because the FSA lenders did not join in the FDIC's motion to remove, the rule of unanimity requires remand. The rule of unanimity ordinarily requires that a case be remanded to the state court from which it was removed unless all defendants join in the motion for removal. 28 U.S.C. § 1446(a); Horton v. Conklin, 431 F.3d 602, 604 (8th Cir. 2005). This case was removed under § 1819(b)(2)(B), however, and that statute allows the FDIC to remove any case to which it is a party from state to federal court within ninety days of its becoming a party. The FDIC's authority to remove under the statute is unilateral: it does not depend upon the consent of other defendants. To read onto § 1819(b)(2)(B) a requirement that all defendants join in the FDIC's motion for removal would undermine the broad removal power that the statute grants the FDIC. We conclude that the rule of unanimity does not limit the FDIC's unilateral power of removal under § 1819(b)(2)(B). Accord Franklin Nat'l Bank Sec. Litig. v. Andersen, 532 F.2d 842, 846 (2d Cir. 1976).

The homeowners argue in the alternative that remand is appropriate as a matter of judicial discretion under 28 U.S.C. § 1441(c). We question the applicability of § 1441(c) in this context since § 1819(b)(2)(B) provides jurisdiction over the state law claims. Even assuming that § 1441(c) were properly invoked here, the threshold for triggering our discretion to remand would not be met. When a case arising under federal law is removed from state court, § 1441(c) affords the federal court discretion to "remand all [otherwise nonremovable] matters in which State law predominates."

The question of predominance is informed by the precept that "[p]re-emption, the practical manifestation of the Supremacy Clause, is always a federal question." Int'l Longshoreman's Ass'n v. Davis, 476 U.S. 380, 388 (1986).

The homeowners urge us to exercise our statutory discretion to remand because Missouri law governing the practice of law allegedly predominates over the question of the preemptive effect of 12 C.F.R. § 560.2. With the exception of their renewed motion to remand, however, the sole issue on appeal is whether § 560.2 preempts the Missouri laws upon which the homeowners base their claims. And since "[p]re-emption . . . is always a federal question," Missouri law is not even at issue, let alone predominant. Davis, 476 U.S. at 388. Remand under § 1441(c) would be inappropriate because the requirement that state law predominate is unmet.

Finally the homeowners invoke Burford v. Sun Oil Co., 319 U.S. 315 (1943), and ask us to abstain from reaching the preemption question in order to avoid impairing Missouri's ability to regulate the legal profession within its borders. "Burford abstention applies when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of complicated state laws." Melahn v. Pennock Ins., Inc., 965 F.2d 1497, 1506 (8th Cir. 1992). That is not the situation here. Moreover, Burford abstention is appropriate only with respect to equitable claims. Barzilay v. Barzilay, 536 F.3d 844, 850–51 (8th Cir. 2008). Not only is there no indication that Missouri's prohibition on the unauthorized practice of law constitutes "a complex regulatory scheme," Melahn, 965 F.2d at 1506, it appears from their first amended petition that plaintiffs have prayed for monetary relief alone. See Barzilay, 536 F.3d at 850–51.

For the foregoing reasons, we deny the homeowners' renewed motion to remand.

B.

The Missouri Circuit Court dismissed the homeowners' claims against the FSA lenders because it found the predicate state laws preempted by 12 C.F.R. § 560.2, a federal regulation issued by the Office of Thrift Supervision (OTS) under the authority of the Home Owners' Loan Act (HOLA) of 1933, 12 U.S.C. §§ 1461–1468. We review de novo the circuit court's dismissal on grounds of preemption. Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

The parties do not contest that § 560.2 preempts conflicting state law, for state law that conflicts with federal law or that frustrates its effect is preempted. U.S. Const. art. VI, cl. 2. And "federal regulations have no less pre-emptive effect than federal statutes." Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982). The only question then is whether the state laws upon which the homeowners base their claims fall within the intended preemptive scope of § 560.2.

We begin with the regulation itself, which declares unequivocally the OTS' intent "[to] occupy the entire field of lending regulation for [FSAs]." § 560.2(a). Paragraph (a) of § 560.2 defines the extent to which state law is preempted: "[FSAs] may extend credit . . . without regard to state laws purporting to regulate or otherwise affect their credit activities." Id. Paragraph (b) provides a nonexhaustive list of the types of state laws that are preempted by paragraph (a). § 560.2(b). Paragraph (c) provides the exception, sheltering from the regulation's preemptive scope state contract, commercial, real property, homestead, tort, and criminal law "to the extent that they only incidentally affect the lending operations of [FSAs] or are otherwise consistent with the purposes of paragraph (a)." § 560.2(c).

OTS interpretative guidelines specify the type of analysis courts should undertake in determining whether § 560.2 preempts a particular state law:

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b).  If so, the analysis will end there; the law is preempted.  If the law is not covered by paragraph (b), the next question is whether the law affects lending.  If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted.  This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c).  For these purposes, paragraph (c) is intended to be interpreted narrowly.  Any doubt should be resolved in favor of preemption.

61 Fed. Reg. 50951-01, 50965–67 (Sept. 30, 1996).  "[A]n agency's interpretation of its own regulation is entitled to deference unless plainly erroneous or inconsistent with the regulation."  United States v. Bailey, 571 F.3d 791, 803 n.7 (8th Cir. 2009) (internal quotation marks omitted).  Since OTS' interpretation is neither, it is due our deference.

Our analysis thus begins by determining whether the state laws in question fall within the scope of § 560.2(b).  "If so, . . . the law[s] [are] preempted."  61 Fed. Reg. at 50966.  Paragraph (b) clarifies that the regulation preempts "state laws purporting to impose requirements regarding . . . (5) [l]oan-related fees, including without limitation, initial charges."  The parties contest the precise meaning of this language.  The homeowners read the words "state laws purporting to impose requirements" to mean state laws that <u>on their face</u> impose requirements expressly upon lenders.  Thus the argument goes, a law which makes no mention of lending necessarily falls outside the scope of the § 560.2(b) examples and is preempted only if § 560.2(a) requires that result, without regard to § 560.2(b).  The FSA lenders read the regulation more broadly:  a state law that does not expressly mention lending is nevertheless preempted if, <u>as applied</u>, the law is one described in § 560.2(b).

Although construction of the regulation is an issue of first impression in this circuit, other courts have confronted the issue.  The Ninth Circuit, for example, has considered the preemptive effect of § 560.2 upon two California statutes prohibiting

unfair advertising and unfair competition. Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001 (9th Cir. 2008). Neither statute purported on its face to impose requirements on lending. Because the statutes as applied were ones described in § 560.2(b), however, the court held them preempted. Id. at 1006. The Ninth Circuit framed the inquiry under § 560.2(b) similarly to the FSA lenders: that is, whether the state law, "as applied, is a type of state law listed under [§ 560.2(b)]." 514 F.3d at 1006 (emphasis added).[2] Holding that the generally applicable state laws met this test, the court expressly rejected any need to analyze the laws under § 560.2(c). Id. Although it failed to explain the reason for its conclusion that an "as applied" analysis was required, the court cited two OTS legal opinions which support its approach.

In a 1999 advisory opinion, the OTS had examined the same California statutes at issue in Silvas. See OTS Op. Chief Counsel (March 10, 1999). Acknowledging that the statutes did not on their face come within § 560.2(b), the agency proceeded to determine whether the § 560.2(c) exception to preemption applied. Id. at 12. The OTS did not analyze the statutes under the express terms of § 560.2(c), however, because they had been applied to impose requirements within the scope of § 560.2(b). Id. at 14–16. OTS thus adopted the approach later employed in Silvas and advocated by the FSA lenders here: a state law that on its face is not one described in § 560.2(b) may nevertheless be preempted if, as applied, it fits within § 560.2(b).

---

[2]The Ninth Circuit is not the only court to have found the "as applied" approach to be correct. See, e.g., Boursiquot v. Citibank F.S.B., 323 F. Supp. 2d 350 (D. Conn. 2004) (§ 560.2 preempted claims under the Connecticut Unfair Trade Practices Act because, when applied to the generally applicable statute, the claims came within the scope of § 560.2(b)); Moskowitz v. Wash. Mut. Bank, 768 N.E.2d 262 (Ill. App. 2002) (claims under the Illinois Consumer Fraud and Deceptive Business Practices Act preempted for the same reason); McCurry v. Chevy Chase Bank, F.S.B., 193 P.3d 155 (Wash. Ct. App. 2008) (claims under the Washington Consumer Protection Act preempted for the same reason).

A 1996 OTS opinion supports this interpretation. Acknowledging that an Indiana deceptive practices statute was on its face not one described in § 560.2(b), the agency nevertheless examined whether it could escape preemption under § 560.2(c). OTS Op. Chief Counsel (December 24, 1996), at 9. The agency concluded in this case that the Indiana statute was not preempted because it fit within the § 560.2(c) preemption exception. Id. at 10. Unlike its later opinion, in 1996 the OTS did not analyze whether the statute as applied came within § 560.2(b). With no applications of the Indiana statute to inform its inquiry, the OTS could not analyze whether the statute as applied was one described in § 560.2(b), but had to rely on an abstract analysis.

The conclusion that § 560.2(b) contemplates an "as applied" analysis finds further support in an amicus curiae brief filed by the OTS in Jenkins v. Concorde Acceptance Corp., 802 N.E. 2d 1270 (Ill. App. 2003)—a case factually similar to the case before the court. As here, the Jenkins plaintiffs sought to enforce against FSA lenders a state statute prohibiting the imposition of fees for the preparation of legal documents by nonlawyers. Id. at 1270. And as here, the statute was facially neutral. It did not mention lending and thus was not a type of law listed in § 560.2(b). The OTS maintained that the statute was nevertheless preempted because, as applied, it imposed requirements regarding loan related fees—making it one of the types of laws enumerated in § 560.2(b). Brief of the Office of Thrift Supervision as Amicus Curiae Supporting Defendant Cititbank, F.S.B. and Similarly Situated Defendants at 10, Jenkins, 802 N.E. 2d 1270 (No. 02-2738).

In sum, the OTS adheres to the analytic approach advocated by the FSA lenders. That approach is not only sensible, it is owed deference. See Auer v. Robbins, 519 U.S. 452, 461 (1997). We conclude that a state law that either on its face or as applied[3] imposes requirements regarding the examples listed in § 560.2(b)

---

[3]The homeowners contend that a decision of the Seventh Circuit is at odds with this interpretation. It is not. In In re Ocwen Loan Servicing, LLC Mortgage Servicing

is preempted. A generally applicable state law that imposes no such requirements will not be preempted if, as applied, it "only incidentally affect[s] the lending operations of [FSAs] or [is] otherwise consistent with the purposes of [§ 560.2(a)]." § 560.2(c).

Two Missouri statutes are at issue here: § 484.020 of the Missouri Revised Statutes, which prohibits the unlicensed practice of the "law business"; and the MMPA, Mo. Rev. Stat. §§ 407.010 et seq., which prohibits fraudulent conduct in commerce. Neither statute purports on its face to impose requirements on lending. The pertinent inquiry is thus whether either statute, as applied, imposes requirements on lending such that it is a type of law enumerated in § 560.2(b).

The first amended petition alleges that the FSA lenders violated both Missouri statutes by charging the homeowners fees for legal document preparation by nonlawyers. Assuming the allegations are true, the charging of those fees would violate both statutes. See Eisel v. Midwest BankCentre, 230 S.W. 3d 335, 338 (Mo. 2007) (holding that such fees violate § 484.020); Zmuda v. Chesterfield Valley Power Sports, Inc., 267 S.W.3d 712, 716 (Mo. Ct. App. 2008) (holding that such fees violate the MMPA). Thus, as applied, the statutes would impose requirements relating to document preparation fees in mortgage transactions. The question, then, is whether such fees fall within the scope of the examples listed in § 560.2(b).

---

Litigation, 491 F.3d 638 (7th Cir. 2007), the court held that several generally applicable state statutes were preempted by § 560.2(a) because, as applied, they fell within the § 560.2(b) illustrative examples. See id. at 645–48. It refused, however, to hold preempted traditional common law actions such as fraud, breach of contract, defamation, and slander of title. Id. Here, the homeowners have alleged a right to recover under the common law theory of money had and received, but unless the Missouri statutes survive the preemptive effect of § 560.2, they have no claim cognizable under that theory. See Carpenter v. Countrywide Home Loans, Inc., 250 S.W.3d 697, 703 (Mo. 2008) ("Any person engaged in the unauthorized practice of law has no right to collect fees, and those who have been improperly charged these fees have the right to their return at common law under the theory of money had and received." (emphasis added)).

According to the FSA lenders, the document preparation fees at issue constitute "[l]oan-related fees, including without limitation, initial charges," as enumerated in § 560.2(b)(5). We agree. We find highly informative the amicus curiae brief filed by the OTS in Jenkins—a case that, for purposes of the preemption analysis, was nearly factually identical to the case here. There, document preparation fees charged by FSAs were alleged to violate a generally applicable state statute prohibiting the imposition of fees for legal document preparation by nonlawyers. See Jenkins, 802 N.E. 2d 1270. The OTS stated its conclusion unequivocally: "The document preparation charges at issue fall squarely within the[] illustrations [enumerated in § 560.2(b)]: they are initial charges and the task of preparing the documents is part of the process of originating the loan." Brief of the Office of Thrift Supervision as Amicus Curiae at 10, Jenkins, 802 N.E. 2d 1270 (No. 02-2738). The homeowners do not contest the OTS conclusion. Nor given the deference due it, do we. See Auer, 519 U.S. at 461.

Accordingly, we conclude that the Missouri statutes upon which the homeowners base their claims would impose requirements regarding "loan-related fees," as listed in § 560.2(b)(5). "[Because] the type of law[s] in question [are] listed in paragraph (b)[,] . . . the analysis . . . end[s] there; the law[s] [are] preempted." 61 Fed. Reg. at 50966. Since the preemption question is thus resolved, further analysis under the § 560.2(c) exception is unnecessary. Id.

### III.

We deny the homeowners' renewed motion to remand to the Missouri Court of Appeals because we retain arising under jurisdiction over the remaining state law claims lodged against the FSA lenders, the FDIC's removal power under 12 U.S.C. § 1891(b)(2)(B) is undiminished by the rule of unanimity, the requirement under 28 U.S.C. § 1441(c) that state law predominate is not met, and Burford abstention would be inappropriate. Furthermore, we conclude that the Missouri laws upon which the

-13-

homeowners base their claims are, as applied, types of laws identified in 12 C.F.R. § 560.2(b).  As a result federal law preempts their enforcement here, and the homeowners' claims fail to state causes of action.  We therefore affirm the dismissal of the homeowner claims on grounds of preemption.

_____

# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329

**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

October 20, 2009

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

    RE: 09-1096  Michael Casey, et al v. North American Savings, et al

Dear Sirs:

    A published opinion was filed today in the above case.

    Counsel who presented argument on behalf of the appellants was Joe D. Jacobson, of St. Louis, MO. Also appearing on this brief were Jonathan F. Andres and Allen P. Press of Clayton, MO.

    Counsel who presented argument on behalf of the appellees was Robert N. Hochman, of Chicago, IL. Counsel appearing on the brief for Appellee Heartland Bank were Kenneth J. Mallin and Joy Holley of St. Louis, MO. Counsel appearing on the brief for Appellee North American Savings Bank was Michael A. Campbell of St. Louis, MO. Counsel appearing on the brief for Appellee ABN AMRO Mortgage Group were Robert N. Hochman, Mark B. Blocker and Jeremy G. Mallory of Chicago, IL, and Sanford J. Boxerman of St. Louis, MO.

    The judge who heard the case in the district court was Honorable Jean C. Hamilton. The judgment of the district court was entered on December 30, 2008.

    If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

MER

Enclosure(s)

cc:  Lois Law
    MO Lawyers Weekly

    District Court/Agency Case Number(s):  4:08-cv-01701-JCH

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

October 20, 2009

Mr. Joe D. Jacobson
GREEN & JACOBSON
7733 Forsyth Boulevard
Suite 700
St. Louis, MO  63105-0000

RE:  09-1096  Michael Casey, et al v. North American Savings, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00a.m. today. Please hold the opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

MER

Enclosure(s)

cc:    Mr. Mark Bruce Blocker
       Mr. Sanford Jay Boxerman
       Mr. Michael A. Campbell
       Mr. Robert N. Hochman
       Mr. Kenneth J. Mallin
       Mr. Jeremy G. Mallory
       Mr. James G. Woodward

District Court/Agency Case Number(s):   4:08-cv-01701-JCH